ANNA M. BERRY *vs.* GEORGE A. INGALLS.

Suffolk. March 6, 1908. — May 21, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Evidence*, Opinion: experts. *Damages. Agency*, Scope of authority, Ratification. *Conversion.*

In an action of tort for the alleged conversion of household furniture belonging to the plaintiff, a woman, and used by her in her home, her opinion as to the value of the furniture is competent on the question of damages.

At the trial of an action of tort for the alleged conversion of household furniture of the plaintiff, it appeared that the defendant, assuming to act under a mortgage which purported to be but was not signed by the plaintiff, and of which the plaintiff had no knowledge, had taken possession of and sold the furniture and refused to return it to the plaintiff, that the plaintiff thereupon had employed an attorney at law to regain the furniture, and finally procured it by paying under protest the amount demanded by the defendant. *Held*, that the expense to which the plaintiff was put for the attorney's services constituted a proper element of damage so far as it was reasonable and proper.

At the trial of an action of tort for the alleged conversion by the defendant of household furniture of the plaintiff, there was evidence tending to show that, upon default in the conditions of a mortgage of the furniture which the defendant had accepted from the plaintiff's husband to secure a loan of money, and which purported to be but was not signed by the plaintiff and of which she had no knowledge, the defendant gave the mortgage to one whom he testified was a " professional forecloser" who foreclosed most of his mortgages for him. The defendant also testified that all he said to the forecloser was " to collect," but that he would not say that he had not given to him a power of attorney covering such matters; that he supposed that the forecloser " knew what he was doing," and " had a right to do it " and that, relying on that supposition, he was willing to leave the matter to the forecloser to do as he pleased. After the foreclosure, the plaintiff demanded her furniture of the defendant, and he refused to return it. Thereupon, after attempting for six weeks with an attorney's assistance to get possession of it without bringing any action, the plaintiff, still denying her signature to the mortgage, paid to the defendant, under protest, the amount claimed by the defendant to be due thereon, together with costs and expenses, and the furniture was returned to her. *Held*, that findings were warranted that the acts of the forecloser either were within the scope of the authority given to him by the defendant, or were ratified by the defendant, and that the payment of the mortgage by the plaintiff, under the circumstances, did not ratify the mortgage or adopt her signature thereon.

TORT for the alleged conversion of household furniture of the plaintiff by an agent of the defendant. Writ in the Municipal Court of the City of Boston dated November 1, 1904.

On appeal, there was a trial before *Wait*, **J.** The evidence introduced on behalf of the plaintiff tended to show that her husband sought of the defendant a loan upon household furniture situated where he and his wife lived, that a representative of the defendant went to the house in the absence of the plaintiff and examined the furniture, that the husband at that time signed a mortgage of the furniture which was left with him to procure thereon the signature of the plaintiff, that thereafter the husband brought the mortgage to the defendant with what purported to be the plaintiff's signature thereon, but that the plaintiff did not know that the mortgage was made and had not signed it.

In default of payment of the amount due on the mortgage note, the defendant gave the mortgage and note to one Mitchell to whom the defendant testified that he gave no other instructions than that he "told him to collect." On cross-examination, however, the defendant stated that he would not say that he gave to Mitchell a general power of attorney to look after all matters of that kind for him, nor would he say that testimony of a witness for the plaintiff, that he had seen a power of attorney in the hands of Mitchell signed by the defendant and authorizing Mitchell's acts, was false. The defendant also testified that Mitchell was " what you might call a professional forecloser," and that he foreclosed most of the defendant's mortgages for him. In response to a question as to whether or not, in this case, he " backed up " Mitchell's actions, the defendant stated, " Well, I said I should not have anything to do with it at all. — Q. By that you mean that the matter was entirely in the hands of Mr. Mitchell, and what he did you would stand up to; isn't that exactly what you mean ? A. Well, I suppose he knew what he was doing — Q. Yes. A. — and had a right to do it. — Q. And, relying upon that supposition, you were perfectly willing to leave it to him and let him do as he pleased ? A. Yes, sir."

It also appeared that, after he placed the matter in Mitchell's hands, the defendant had no further knowledge of what was done by Mitchell, until demand was made upon the defendant by the plaintiff's attorney for return of the property, which he refused to do.

There also was evidence tending to show that, after the fore-

closure, the plaintiff, though denying her signature, and the validity of the mortgage as binding her, after trying, without success, for six weeks every means that she or her counsel could devise to get possession of said furniture without bringing any action, paid to the defendant, under protest, the amount due upon said mortgage, together with some costs and expenses connected with the foreclosure of the same, and the goods were returned to her.

At the close of the evidence, the defendant requested the following rulings: " (1) If the plaintiff knew of the existence of the mortgage, and that her husband's name was signed thereto, and knew that the defendant claimed by virtue of the mortgage, and afterward paid the defendant the amount due thereon, and got a discharge of the mortgage, and received the goods back to herself, then the plaintiff ratified the mortgage, and she cannot recover. (2) If the defendant gave the mortgage and note to an attorney, with the simple instruction to collect the amount due, and took no further part in the proceedings, he is not responsible for the mistake or tort of his attorney."

The requests were refused, there was a verdict for the plaintiff and the defendant alleged exceptions.

Other facts are stated in the opinion.

*G. L. Dillaway*, for the defendant.

*G. H. Russ*, for the plaintiff.

MORTON, J. This is an action of tort to recover damages for the conversion by the defendant of certain personal property consisting of household furniture which the plaintiff alleged belonged to her. The case comes here after verdict for the plaintiff on exceptions by the defendant to the refusal of the court to give certain rulings which were requested and to the admission and exclusion of certain evidence.

The property was household furniture consisting presumably of articles in common use, and we think that as owner the plaintiff was competent to express an opinion as to their value. *Lincoln* v. *Commonwealth*, 164 Mass. 368, 380. *Shea* v. *Hudson*, 165 Mass. 43, and cases cited.

The question, " How did you happen to go to see him? " meaning the gentleman through whom she got in touch with the man to whom she sold, in June, 1907, four years after the

.alleged conversion, a carpet which constituted a part of the furniture, was plainly immaterial.

The expense to which the plaintiff was put for an attorney's services in securing the redemption and recovery of the furniture after the defendant had refused to return it, constituted a proper element of damage so far as it was reasonable and proper. It was or could have been found to be rendered necessary by the defendant's refusal to return the property, and constituted no part of the expense of the present suit for which in contemplation of law the taxable costs are full indemnity. *Atwood* v. *Boston Forwarding & Transfer Co.* 185 Mass. 557. *Stern* v. *Knowlton*, 184 Mass. 29. *Westfield* v. *Mayo*, 122 Mass. 100. *Newton Rubber Works* v. *de las Casas*, 182 Mass. 436.

The evidence warranted a finding that Mitchell was authorized by the defendant to take the furniture, or that the defendant had ratified and adopted his action in taking it, even if it could have been found that he did not originally give him authority to do so.

Whether the plaintiff had ratified and adopted what purported to be her signature to the mortgage depended upon the circumstances under which the alleged ratification or adoption took place. There was evidence tending to show that the payment relied upon by the defendant was made by her under protest in order to get possession of the furniture, and under a claim that the signature was not her signature and that the mortgage was not binding on her. Payment under such circumstances would not constitute a ratification or adoption of the mortgage, and the defendant's requests in regard to this matter and the authority of Mitchell were properly refused.

*Exceptions overruled.*