Lenhoff, J.
This action was originally commenced in the Superior Court for replevin an,d conversion of the plaintiffs business records by the defendant. The plaintiff had sought a temporary restraining order, a preliminary injunction, a permanent injunction and damages. Simultaneously, the plaintiff filed an ex-parte temporary restraining order with a short order of notice resulting in the Superior Court ordering the defendant to deliver to the plaintiff his business records. Thereafter, the case was transferred by the Superior Court to the District Court. G.L.c. 231, §102C
In the District Court, the complaint was amended alleging (1) conversion; (2) a claim for fraud and deceit by reason of the defendant’s failure to pay for the plaintiffs repairing of the defendant’s customer’s car; (3) breach of contract due to defendant’s failure to pay for repairs to said defendant’s customer’s car; (4) action on a check given by the defendant to pay for repairs *170 to his customer’s car on which check payment was stopped; and, (5) a Chapter 93A violation, including allegations of said violation having been made in bad faith, willfully and with knowledge.
The defendant filed an answer denying the above complaint, as amended; and, by way of counterclaim, alleged (1) that the plaintiff was indebted to the defendant for unpaid rent and utilities; (2) a violation of G.L. c. 93A based on said claimed unpaid rent and utilities; (3) the wrongful removal, of personal property of the defendant by the plaintiff; (4) a violation of G.L.C. 93A based on said alleged wrongful removal of property, (5) false imprisonment of the defendant by the plaintiif; (6) assault; and (7) violation of G.L.c. 93A by making repairs to a customer’s motor vehicle and not complying withr reulations promulgated by the Attorney General.
The allegations of the defendant’s counterclaim were denied by the plaintiff.
The evidence tended to show that in January 1980, the plaintiff orally agreed to rent from the defendant for a $500 per month rental three bays for the repair of cars located in the rear of the defendant’s building, situate at 222 North King Street in Northampton, Massachusetts. It was further agreed that the plaintiff would pay the defendant, as additional rent, one half of the cost for the entire building for utilities, gas and electricity.
On January, 1980 the plaintiff paid the defendant $600 for January’s rent plus utilities and a second sum of $600 for the last month’s rent and utilities. Subsequently, the rent was increased to $600 per month, then to $700 per month. However, it was again increased to $850, effective August 1, 1981, which was paid by the plaintiff, under protest.
The remaining portion of the building in which the plaintiff was a tenant was used by the defendant in his business of buying and selling used cars. The parties also had a business relationship with each other, the plaintiff repairing and reconditioing cars purchased by the defendant before re-sale.
On July 14,1981, the defendant asked the plaintiff to look at a vehicle he had sold the previous April to one Carl. The plaintiff determined that a transmission problem existed and informed the owner that the estimated cost of repair would be $150.00. Carl authorized the plaintiff to disassemble the transmission and it was discovered that the fifth gear was stripped. Again, Carl was notified, and the plaintiff was authorized to do the repair work with an estimated cost of $500 according to the plaintiff. The owner, Carl, contended that such estimated cost was $200.00. When the car work was completed, Carl appeared to get her vehicle and was presented with a $566.87 bill. The plaintiff would not release the vehicle until the bill was fully paid. Having offered to pay the bill, the defendant was requested by Carl to issue a check for the repairs. He did so and the car was released. Later that day, Carl experienced the failure of the car to shift out of reverse, causing the car to be towed to another garage. Thereupon, Carl requested the defendant to stop payment of the check and this was done. Carl did not request the plaintiff to repair the car, she having another repairman do so at a cost of $100.00.
The plaintiff has requested Carl to pay the bill, but has never billed her. He did ask the defendant to pay the bill and the defendant responded “That is not my check.”
The increased rental of $850.00 commencing August, 1981 was paid by the plaintiff under protest. On August 5,1981, the plaintiff gave notice terminating his tenancy as of September 30,1981. He paid no rent on September 1,1981. The parties agreed that all rent was paid through August, 1981. It was also *171 agreed that the plaintiff paid his share of the utilities through mid-July of 1981 and owes $138.80 as his share for utilities from mid-August, 1981 to the end of the tenancy.
After the plaintiff left his rented premises on September 24, 1981, the defendant and a helper moved three of the defendant’s cars infront of each of the three bays rented to the plaintiff. Upon the plaintiff’s return, he asked the defendant to allow him to get into his part of the garage and the defendant refused, giving as a reason for his action that the September rent was not paid. A resulting argument caused the plaintiff to drive his truck up to the door leading to the defendant’s offices, locking it and leaving it in a parked position. The defendant called the police who requested the plaintiff to move his vehicle from in front of the door. He complied and also took some records from his office.
After both parties left the premises, the plaintiff returned with others. They moved the vehicles from in front of the bays and started to remove equipment. The defendant again on the following Saturday, September 25,1981, while the plaintiff was in the process of moving out, barred the office door, and then left the premises. The plaintiff with help returned to his garage area to remove the balance of equipment. When this area was emptied, they approached the office area to remove his business papers. The defendant stood in the doorway blocking the entrance causing the plaintiff to withdraw. The defendant retained the possession of the plaintiffs business records unitl ordered by the Superior Court to return them on October 1,1981. To obtain such Superior Court order with the resulting compliance therewith restoring the possession of the plaintiffs property to him, the plaintiff expended the sum of $525.00 for legal fees.
The Trial Court made Findings, Rulings and Orders of Judgment. Its findings included all the facts contained in the evidence herein before stated together with a finding that though the plaintiff did not pay his share of the utilities from mid-July, 1981 until .the tenancy’s end, there was no evidence produced as to the amount due between mid-July to mid-August. It also found that no evidence was presented to indicate that the defendant did not have some other means of leaving the premises while and during the time the plaintiffs truck blocked his office door. Said findings also noted that the defendant made no effort to stop the plaintiff from removing any equipment located in the garage area. Further, that evidence was conflicting as to the ownership of said equipment nor its condition; and, no evidence was adduced as to the fair value of all or a part of said equipment.
The Trial Court’s rulings and orders of judgment based on its foregoing findings are as follows:
As to the plaintiffs amended complaint
1. That the defendant’s refusal to allow the plaintiff to remove his business records from the rented premises on September 26, 1981 constituted conversion and the defendant is liable to the plaintiff in the amount of $525.00, being the legal fees expended by the plaintiff in recovering these documents by means of a temporary injunction.
2. That the defendant was acting as agent on behalf of Ellen Carl in making car payment to the plaintiff for the repairs made to her car, and therefore is not liable for the amount of the check given by the defendant to the plaintiff upon which payment was stopped.
3. That the defendant’s conduct in coverting the plaintiffs business *172 records to his own use constituted an unfair or deceptive act or practice and was done in bad faith and in willful and knowing violation of the General Laws chapter 93A, and therefore the defendant is liable in triple damages in the amount of $1,575.00.
As to the defendant’s counterclaims
1. That the plaintiff owes the defendant $388.80, being the rent due for September of 1981 in the amount of $850, plus the plaintiffs share of the utilities from mid August of 1981 to the end of the tenancy, in the amount of $138.80, less the sum of $600, being the amount payed by the plaintiff when the tenancy began, to cover the last month’s rent and utilities.
2. That the plaintiffs failure to pay rent and the plaintiffs share of utilities, do not constitute a violation of chapter 93A of the General Laws of Massachusetts.
3. That the evidence was inconclusive as to what, if any, items belonging to the defendant were removed by the plaintiff at the end of the tenancy, and as to the fair market value of any such items of personal property that the plaintiff may have removed from the premises.
4. That, as the evidence was inconclusive as to whether the plaintiff removed any items of personal property of the defendant from the rented premises, there was no violation of chapter 93A of the General Laws of Massachusetts.
5. That the plaintiffs blocking of the office door of the defendant’s building did not constitute unlawful restraint of the defendant by the plaintiff, as there was no evidence that the defendant did not have other means to leave the premises.
6. That the plaintiffs driving his truck up to the office door of the defendant’s building did not constitute an assault upon the defendant.
7. That, although the defendant acted as agent for Carl in payment of the repair bill for work done by the plaintiff on Carl’s vehicle, Carl, and not the defendant, is the only person who can allege violations by the plaintiff of the regulations of the attorney General promulgated pursuant to chapter 93A of the General Laws of Massachusetts.
As to the Trial Court’s Orders for Judgment On On the plaintiffs amended complaint
1. For the plaintiff against the defendant on the First Cause of Action in the amount of $525.00.
2. For the defendant on the Second Cause of Action.
3. For the defendant on the Third Cause of Action.
4. For the defendant on the Fourth Cause of Action.
5. For the plaintiff against the defendant on the Fifth Cause of Action in the amount of $1,575.00.
On the Defendant’s counterclaims
1. For the plaintiff-in-counterclaim (defendant) against the defendant-in-counterclaim (plaintiff) on the first counterclaim in the amount of $388.80.
2. For the defendant-in-counterclaim (plaintiff) on the second *173 through seventh counterclaims.
At the close of trial and before final argument, the plaintiff filed thirty-six (36) Requests for Rulings and the defendant filed four (4) Requests.
The plaintiffs requests numbered one (1) through six (6); eight (8) through twenty-two (22); and thirty (30) through thirty-two (32) were denied with the words “See Court’s Findings” placed alongside each denial. The other requests were granted.
All four (4) of the defendant’s Requests were denied with the same verbiage following each denial; to wit: “See Court’s Findings.”
Both the plaintiff and the defendant have caused their respective grievances to be reported to the Appellate Division.
The plaintiff claims to be aggrieved by the Trial Court’s denial of its Requests numbered 8, 9, 10, 11, 12, 13, 14, 15, 16,17,18, 19, 30 and 32 plus the Trial Court’s ruling No. 1 on the defendant’s Counterclaims.
The defendant is aggrieved by the Trial Court’s denial of his four (4) requests, the granting of plaintiffs Requests 27, 28, 29 and 33 plus the Trial Court’s rulings on the plaintiffs complaint numbered 1 and 3 and its rulings on the defendant’s counterclaim numbered 2 through 7.
The denial of a request that is inconsistent with the Trial Court’s general finding would constitute error in the absence of findings of fact to render the denial immaterial. Di Gesse v. Columbia Pontiac Co., 369 Mass. 99, 102 (1975).
On the other hand, the allowance of a request that is not consistent with the ultimate finding, would be construed as being erroneous unless the Trial Court, by clear and definite findings, demonstrates it has been rendered inconsequential, inapplicable or immaterial by said findings. Hoffman v. Chelsea 315 Mass. 54, 56-57 (1943). Also, even if a request sets forth a correct statement of law, it is properly denied when it becomes immaterial by the Trial Court’s findings of fact. Pemberton Square Operating Co. v. Lydon, 292 Mass. 63, 66 (1935).
The plaintiff’s Requests numbered eight (8) through sixteen (16), inclusive, attacks the general finding in favor of the defendant relative to his liability for the payment of repairs made to a car of his customer; and, for the check the defendant issued in payment, which check’s payment thereafter was stopped. His requests seventeen (17) through nineteen (19), inclusive, relate to the tenancy between the parties. All these requests have been rendered immaterial by the Trial Court’s findings of fact that are supported by the evidence and the reasonable inferences to be drawn therefrom. By reason thereof, such Trial Court’s findings cannot be disturbed. Barttro v. Watertown Square Theatre, Inc., 309 Mass. 223, 224 (1941).
Finally, the plaintiffs remaining Requests 30 and 31, stating that the plaintiff, on all the evidence, is entitled to ajudgment against the defendant for the repairs of the defendant’s customer’s car and for overpayment of rent with the denial of these requests by the Trial Court, is now considered. We find no error. The Trial Court’s disposition was correct for, upon the evidence, a contrary finding was permisslbe. Anopolle v. Carver, 327 Mass. 344, 346 (1951). . .
. . The above demonstrates that the Trial Court’s action in denying the plaintiffs Requests was proper. So far as the plaintiffs grievance regarding the Trial Court’s Ruling No. 1 of the defendant’s counterclaim is concerned, such ruling is a finding of fact. It is not reviewable and stands, being supported by a reasonable view of the evidence. Barttro v. Watertown Square Theatre, Inc., *174 supra.
Our attention is now directed to the defendant’s grievances.
The defendant’s Request No. 1 that fair market value is the “usual” measure of damages in a conversion case, though a correct statement of law, was properly denied by the Trial Court as the Trial Court rightfully used an additional or alternative measure of damages not in the so-called “usual”' category. Consequently, the request was inapplicable. Request No. 2 that states damages are limited to the difference in value of the property between the dates when converted and returned, likewise is not applicable. Therefore, its denial was in order. The third request is similar to the second with the addition that damages may include the loss of use during wrongful detention. For the same reason, this request’s denial was correct. Lastly, the fourth and final defendant’s Request states “Counsel fees are collectable only in exceptional cases of which this is not one.” The Trial Court’s denial of this request was accurate for it is apparent that the said Court concluded that the instant case was “exceptional.” However, the question of whether the Trial Court had the power to so conclude on the facts here involved in discussed hereinafter.
Considering the defendant’s grievances of the Trial Court’s Rulings on its counterclaim and the granting of plaintiffs Requests 27, 28, 29 and 33, close examination reveals that a reasonable view of the evidence with the permissible inferences drawn therefrom supports the said rulings. Barttro v. Watertown Square Theatre, Inc., supra. Such findings made justifies the granting of said requests. We further point out that this tribunal cannot disturb the Trial Court’s findings unless, as a matter of law, they could not be made. Heil v. McCann, 360 Mass. 507, 511 (1971). Such findings of the Trial Court are held conclusive if there be any credible evidence to support them. Glazier v. Andrews, 349 Mass. 417, 419. Hence, these grievances are without merit.
Notwithstanding the foregoing, we are confronted with two problems to be resolved. One being whether the recovery of attorney’s fees, as an element of damages on a conversion complaint, is permissible; and, two, whether attorneys’ fees can be considered as “damages” for the purposes of a G.L. c. 93A recovery?
In Massachusetts, there is no common law precedent for the award of costs and attorneys’ fees.. As a general rule, a litigant must bear his own expenses. Fuss v. Fuss (No. 1), 372 Mass 64, 70 (1977). In Malloy v. Carroll, 287 Mass. 376, 384 (1934), the Court said:
As a general rule, taxable costs are considered full compensation to a prevailing party for the expense of conducting litigation even though such costs.are only nominal and wholly inadequate.
In the case of Berry v. Ingalls, 199 Mass. 77, 80 (1908), the Court said:
The expense to which the plaintiff was put for an attorney’s services in securing the redemption and recovery of the furniture after the defendant had refused to return it, constituted a proper element of damages so far as it was reasonable and proper. It was or could have been found to be rendered necessary by the defendant’s refusal to return the property, and constituted no part of the expense of the present suit for which in contemplation of law the taxable costs are full indemnity.
The case of Chartrand v. Riley, 354 Mass. 242 (1948) states, with clarity, that only in cases of exceptionable circumstances will counsel fees be allowed. Cited therein is Malloy v. Carroll, supra, where at page 385, the Court said:
*175 In actions based on wrongful conduct of the defendant, where the wrong is of such character that the proper protection of the plaintiffs rights necessarily requires him to employ counsel to gain redress for the wrong, he may recover as an element of damages reasonable counsel fees.
Commenting thereon, in said case of Chartrand v. Riley, supra, at page 244, we find the following language:
A rule so formulated, it would seem, could be extended to any case where the plaintiff has to seek his remedy in the courts.
At said page 244, the Court further commented:
The trend in more recent decisions has been to deny the inclusion of these expenses in the award of damages.
It is our opinion that the facts of the case at bar reveals exceptional circumstances. We note that the defendant wrongfully, without right and in derogation of the plaintiffs rights, indulged in self-help to'assert authority that he then did not possess. That, in consequence thereof, he did take or retain control and/or possession of the plaintiffs business records until ordered to release same six (6) days later by Superior Court mandate. Under the circumstances here prevailing, the only recourse available to peaceably obtain the return of his property was to seek and invoke the equity power of our courts. This he did, causing him to incur expense therefor, which we hold is and should be an element of special damages, to the end that the party wronged should not suffer economic hardship in his quest to right a wrong. Such remedy is in the form of a penalty that is to be imposed in situations created, as it was here, by the brazen aggressive, harassing action of a most drastic and uncalled for nature. By reason thereof, we follow the law as enunciated in Berry v. Ingalls, supra, for applicable exceptional circumstances existed; and, the finding and/or conclusion accordingly by the Trial Court was proper.
Because the Trial Court’s judgment in this particular has been upheld, our sights are now focused on the Trial Court’s award to the plaintiff in the G.L. c. 93A complaint. Said award being treble the special damages consisting of the attorney fee award in the conversion complaint or $1,575.00.
G.L. c. 93A, §9 affords an individual consumer who suffers a loss resulting from an unfair or deceptive act or practice, a remedy; and § 11 of said chapter extends the remedy to “(a)ny person who engages in the conduct of any trade or commerce.” Lantner v. Carson, 374 Mass. 606, 611 (1978).
The chapter 93A complaint was brought pursuant to §11 thereof, both parties being engaged in commerce involving the rental of commercial property.
It is the duty of a Trial Court to analyze the circumstances to determine if particular conduct is an unfair or deceptive act or practice. Mechanics National Bank of Worcester v. Killeen, 377 Mass. 100, 109 (1979). In Hanner v. Classic Auto Body, Inc., 10 Mass. App. Ct. 121 (1980), it was held that an unauthorized towing of a car in an attempt to collect a repair bill constituted an unfair or deceptive act or practice. Hence, the tactics of the defendant in his attempt to collect the September rent from the plaintiff was correctly determined by the Trial Court to be an unfair or deceptive act or practice performed by him in a willful and knowing manner.
Though the plaintiff sought relief by a complaint alleging conversion of his property, he does have a right to also seek relief in a chapter 93A action for *176 same is “in addition to, and not an alternative to,” traditional tort and contract remedies. Linthicum v. Archambault, 379 Mass. 381, 383 (1979). It follows that it was proper for the plaintiff to also proceed with a chapter 93A complaint.
In discussing the Trial Court’s awarding of what it believed was treble the plaintiffs damages, we recognize that the multiple damage provisions in §9 and §11 of said chapter 93A plus counsel fees were designed to impose a penalty that varies with the culpability of a defendant. Further, we take cognizance that G.L. c. 93A, §§9 and 11 are related but not parallel and “the conditions of one section should not be read by implication into the other.” Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 503 (1979).
The second sentence of the fourth paragraph of § 11 of chapter 93A reads: “. .. said damages may include double or treble damages, attorneys fees and costs, as hereinafter provided....” In the first sentence of the fifth paragraph of said §11, we find the following language:
If the court finds for the petitioner, recovery shall be the amount of actual damages; or up to three, but not less than two, times such amount if the court finds . . . was a willful or knowing violation of said section two.
And, in the next to the last paragraph of said § 11 the following words áppear:
... the petitioner shall in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney’s fees and costs incurred in said acton.
The above quoted portions of said § 11 clearly show that the General Court differentiated between “attorney’s fees” and “damages.” The same verbiage in this respect is found in §9 of said chapter 93A. Such separate and distinct statutory treatment indicates that “attorney’s fees” and “damages” cannot be one and the same. The statute provides that “attorney’s fees” are to be added to “damages” as part of the intended penalty aspects of the law. Therefore, to consider “attorney’s fees” as “damages” under c. 93A is held to be error.
To further illustrate our reasoning, the viewing of the facts of this case on the basis that the plain tiff had only instituted a c. 93A proceeding, would leave no other justifiable conclusion.
Having decided that “attorney’s fees” are in addition to “damages,” we ask the question whether in the c. 93A proceedings there are “damages” other than what the Trial Court found (the attorney’s fees)? We answer in the affirmative for if there be no actual or substantial damage shown and there has been an invasion of one’s property, the law implies that one is entitled to nominal damages. Jarvis v. DePeza, 251 Mass. 447, 448 (1925); Whitman v. Merrill, 125 Mass. 127, 130 (1878). It is apparent from the evidence and the findings of the Trial Court that the matter of awarding nominal damages was overlooked. Such oversight is also deemed to be error. Had the Trial Court found nominal damages, its finding that the defendant’s unfair or deceptive act or practice was willful and knowing would have resulted in same being trebled. Thus, the trebled nominal damages plus the attorney’s fee would have aggregated the total award.
The plaintiff having proceeded with a chapter 93A complaint now empowers this Appellate Divison to order judgment for the plaintiff for nominal damages. Charles Street Garage Co. v. Kaplan, 312 Mass. 624, 627 (1942); Centennial Electric Co. v. Morse, 227 Mass. 486, 491 (1917), Exercising our authority accordingly, nominal damages are assessed in the sum of $25.00. (This is in line *177 with the damage minimum sum statutorily mandated in G.L. c. 93A, §9). Trebling the damages of $25.00 assessed to coincide with the Trial Court’s treatment shown in its decision gives a c. 93A damage figure of $75,00 to which “attorney’s fees” of $525.00 is added to thereby make the grand total sum of $600.00 due the plaintiff.
It is stated previously herein that- the assessment of attorney’s fees on the conversion complaint allowing same as special damages because of exceptional circumstances, in reality is a penalty. It is also the design of c. 93A to provide a penalty. But, the fact that both complaints were brought and pursued, does not authorize cumulative damages.
In the case of McGrath v. Mishara, 386 Mass. 74, 85 (1982), the Court held that G.L. c. 93 A does not authorize cumulative damages under the statute and other statutes for the same wrong. We hold that cumulative damages are'also not authorized under c. 93 A to duplicate speciál dámáges recoverable in cases considered exceptional due to peculiar circumstances.
To conclude:
(1) As to the Report of the plaintiff, there being no prejudicial error, Report Dismissed.
f2 j As to the Report of the defendant, error having been found solely on the plaintiff’s Fifth Cause of Action, the judgment entered thereon; be and is hereby vacated. Further, that there be a further entry made in place thereof, to wit: Judgment for the Plaintiff against the defendant on the Fifth Cause of Action in the sum of $600.00, limited to one recovery not to exceed $600.00 on the First and Fifth Causes of Action combined. As to all other causes of action and entries, judgments heretofore entered are affirmed.